# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

-----------------------------------------------------------------X

PALESTINE MONETARY AUTHORITY,
P.O. Box 452, Ramallah, Palestine,

Plaintiff,

v.

DAVID STRACHMAN,
as Administrator of the
ESTATES OF YARON UNGAR
AND ERFAT UNGAR,

SERVE: David Strachman, Esq
McIntyre, Tate, Lynch & Holt
321 South Main Street,
Providence, RI 02903

-and-

DVIR UNGAR,
MINOR, BY HIS GUARDIANS AND NEXT FRIEND,
PROFESSOR MEYER UNGAR,

SERVE: David Strachman, Esq
McIntyre, Tate, Lynch & Holt
321 South Main Street,
Providence, RI 02903

-and-

JUDITH UNGAR,

SERVE: David Strachman, Esq
McIntyre, Tate, Lynch & Holt
321 South Main Street,
Providence, RI 02903

-and-

RABBI URI DASBERG,

SERVE: David Strachman, Esq
McIntyre, Tate, Lynch & Holt
321 South Main Street,
Providence, RI 02903

CA 05 261 L

Civil Action No.: ______________

Judge: ______________________

-and-

JUDITH DASBERG (INDIVIDUALLY AND IN THEIR CAPACITY AS LEGAL GUARDIANS OF PLAINTIFFS DVIR UNGAR AND YISHAI UNGAR)

SERVE: David Strachman, Esq
McIntyre, Tate, Lynch & Holt
321 South Main Street,
Providence, RI 02903

-and-

AMICHAI UNGAR,

SERVE: David Strachman, Esq
McIntyre, Tate, Lynch & Holt
321 South Main Street,
Providence, RI 02903

DAFNA UNGAR

SERVE: David Strachman, Esq
McIntyre, Tate, Lynch & Holt
321 South Main Street,
Providence, RI 02903

-and-

MICHAL COHEN,

SERVE: David Strachman, Esq
McIntyre, Tate, Lynch & Holt
321 South Main Street,
Providence, RI 02903

Defendants.

---------------------------------------------------------------X

**COMPLAINT**

PLAINTIFF, the Palestine Monetary Authority ("PMA" or "Plaintiff"), by undersigned counsel, for its claims against the DEFENDANTS, David J. Strachman, as Administrator of the

Estates of Yaron Ungar and Erfat Ungar ("Strachman" or "Defendant"), Dvir Ungar, (Minor, By His Guardians And Next Friend, Professor Meyer Ungar), Judith Ungar, Rabbi Uri Dasberg and Judith Dasberg (Individually and in Their Capacity as Legal Guardians of Plaintiffs Dvir Ungar and Yishai Ungar), Amichai Ungar, Dafna Ungar, and Michal Cohen and their agents (collectively "Defendants"), states as follows:

## INTRODUCTION

Plaintiff's claims arise from action taken by Strachman resulting in the freezing of approximately $30 million of PMA's funds by the Bank of New York ("BNY"), headquartered in Manhattan, without due process or any proper basis. BNY's actions stem from a restraining order and injunction (the "Orders") issued by this Court in the case, Estates of Yaron Ungar, et al. v. Palestinian Authority, et al., C.A. No. 00-105L (Honorable Ronald R. Lagueux) (the "Judgment Action"). A true and correct copy of the Restraining Order and Injunction Order is attached hereto as **Exhibit 1**.

The orders issued in the Judgment Action arise from a judgment obtained by the plaintiffs against the Palestinian Authority ("PA"), the Palestinian Liberation Organization (PLO") and others. Significantly, nowhere in the case is the PMA named as a defendant. Nor is the PMA named anywhere in the action or as an entity holding or managing assets of any of the named entities or individuals.

Notwithstanding the foregoing, on or about May 5, 2005, Strachman caused BNY to be served BNY with a "Notice of Injunction" and a copy of the Injunction. Strachman's notice improperly stated that "assets of the PA and PLO are held and/or titled under the names…Palestine Monetary Authority…". A true and correct copy of the Notice of Injunction is attached hereto as **Exhibit 2**. Upon information and belief, BNY froze all PMA-related

transactions after reviewing the Notice of Injunction falsely designating PMA as holding PLO and/or PA assets. The freeze or hold on these transactions must be lifted immediately.

**THE PARTIES**

1. Plaintiff Palestine Monetary Authority is the regulatory authority for commercial banks and related deposit taking institutions in the Palestinian territories. The PMA is not controlled by the PA or by the PLO. Moreover, it does not hold any funds belonging to either organization who appear to be judgment debtors in this action. It possesses an autonomous corporate character financially independent from the PA and PLO. It neither holds nor manages any funds of the PA or of the PLO or of any other named-defendant in this action. Its headquarters are located at P.O. Box 452, Ramallah, Palestine.

2. The PMA was created in 1995 as a result of the "Declaration of Principles on Interim Self-Government Arrangements," dated September 13, 1993—also known as the Oslo Accords. The PMA was established with a view to becoming the central bank of the future State of Palestine. Upon the establishment of the PMA by act of the elected Palestinian Legislative Council in 1997 (Law No. 2 of 1997), the PMA did not receive any subscription capital from the PA or PLO nor has the PMA received such funds at any other time since. As Palestine is yet to achieve sovereignty, the PMA remains an autonomous chartered regulator whose purpose is to facilitate normal banking activity and to help maintain financial stability. The highest source of authority for the activities of the PMA is its own board of directors, chaired by the Governor.

3. The PMA essentially acts as a clearing house, or intermediary, for all commercial banks in the Palestinian territories, such as the Arab Bank, PLC, Cairo Amman Bank and the Palestine Bank, Ltd. It transacts in Israeli shekels, euros, Jordanian dinars and importantly for the purposes of this Complaint—in U.S. dollars. The U.S. dollar is legal tender in the Palestinian

territories. About 60% of transfers managed by the PMA from banks and individuals in the territories are in U.S. Dollars.

4. PMA, through its bank—the Palestine International Bank ("PIB")—clears all U.S. dollar transactions with the BNY in Manhattan. These transactions result from daily check clearances, inter-bank transfers and other transfers between private parties. These operations are mediated by the PMA. Through this activity, the PMA provides needed liquidity and facilitates transfers among private banks and individuals.

5. Non-party BNY is a multi-faceted banking institution offering a wide array of services such as individual banking, institutional investment management services and treasury management services to international clients. Its headquarters are located at One Wall Street, New York, New York 10286.

6. Defendant Strachman is the Adminstrator of the Estates of Yaron Ungar and Erfat Ungar in this action. Strachman is also an attorney with the law firm of McIntyre, Tate, Lynch & Holt, 321 South Main Street, Providence, RI 02903. In early May, 2005, Strachman caused a "Notice of Injunction" to be mailed to BNY in Manhattan. As a direct result of Strachman's notice, BNY froze PMA's transactions.

## VENUE AND JURISDICTION

7. This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), as it involves a plaintiff citizen of a foreign state, the PMA, and citizens of the United States, Defendants Strachman, *et al.*, and the amount in controversy exceeds $75,000.

8. Venue is proper under 28 U.S.C. § 1391(a).

## FACTS COMMON TO ALL CAUSES OF ACTION

9. On or about May 18, 2005, the PMA discovered that millions of dollars of transactions (of the types noted above) had been inexplicably frozen by BNY. The PMA also discovered that its ability to move its dollar holdings for interest bearing purposes has been blocked—seriously damaging the PMA's ability to manage the funds in its custody and to earn income therefrom.

10. From May 18, 2005 through May 25, 2005, the PMA endeavored to obtain an explanation and accounting from BNY, as well as attempt to resolve the situation. BNY informed PMA that it had received a restraining order entered in this action and, as a result, that BNY had taken measures to freeze PMA's transactions. On or about May 28, 2005, Mr. George Abed, Governor of the PMA, flew from Ramallah to the United States to seek legal counsel. He was able to retain counsel on May 30, 2005 after having some difficulty locating counsel over the long holiday weekend.

11. Washington, DC counsel retained local counsel in New York and attempted to file papers in the Supreme Court of New York—the most accessible jurisdiction for emergency relief, which was also where Strachman has domesticated the judgment and where the PMA's property was frozen—on May 31, 2005. Counsel was turned away (in error) by the clerk of the court until they were able to file papers on June 3, 2005. A hearing took place on the PMA's application for emergency relief on June 6, 2005. A true and correct copy of the transcript from that proceeding is attached hereto as **Exhibit 3**. The Honorable Bernard Fried denied the application for temporary restraining order and set a briefing schedule on the injunction application. Although Judge Fried exercised his discretion and retained jurisdiction over the case, he expressed the opinion that the matter would be best heard before this Court.

12. The PMA is neither a defendant in this action, nor does it hold or manage any assets of the PLO or PA or any assets of any other defendant named in the Judgment Action (nor does it have access to any of these funds). It was not named in either of the Orders.

13. To evidence the PMA's autonomy and financial independence from the PA and PLO and to demonstrate that the blocking or freezing of PMA's transactions with the BNY is without any legal or factual justification, PMA instructed its auditors to prepare a report detailing the source of the PMA's funds. A true and correct copy of the audit report by Saba & Co. (an international auditing firm), dated May 25, 2005, is attached hereto as **Exhibit 4.** The audit showed that all funds in the PMA's possession, entirely and exclusively, consist of funds held on behalf of commercial banks, its own capital and reserves and employees' provident funds.

14. In addition, the PMA has an electronically generated call report (dated December 31, 2004)—showing the funds each commercial customer believes are held by the PMA (entitled "Required Reserves, Time and Current Cell Deposits with the PMA and differences between PMA Audit statement and the Banks Call Report"). A true and correct copy of the Call Report is attached hereto as **Exhibit 5.** This report can be reconciled with the auditor's report on the PMA's accounts within approximately $3 million.[1] Again, this report is evidence that the PMA deals exclusively with privately owned commercial banks and has no financial relationship with the PA or PLO or any other defendant in the Rhode Island Action and that all funds deposited in the PMA are private funds.

15. Also, BNY recently produced a schedule of all transactions authorized by PMA for the benefit of its customers. All of the funds beneficiaries are commercial banks and not the

---

[1] Discrepancies can be explained due to differences in booking dates and value dates of different entries.

PA or PLO. A true and correct copy of Bank of New York's Responses to Plaintiff's Questions in Connection with Information Subpoena, dated June 10, 2005 is attached hereto as **Exhibit 6.** [2]

16 On May 19, 2005, PMA instructed its own bank, the PIB, to write to BNY urging that the Bank honor all outgoing and incoming payments and emphasizing that all frozen funds belong to private, licensed commercial banks in the Palestinian territories and not to the PMA. A true and correct copy of the letter from Mr. Usama Khader, General Manager of PIB to Mr. Ammar Khaleel, Middle East, Eastern Europe & Africa Division for the Bank of New York, is attached hereto as **Exhibit 7.**

17 Despite PIB's demands that the BNY unfreeze the transactions in question, the private fund transactions remain frozen. Upon information and belief, no security pursuant to Rule 65(c) has been given by Defendants in connection with securing the restraining orders sent to BNY.

18 PMA estimates that approximately $30 million in private fund transactions remain blocked today. Also, since PMA discovered this situation and to protect more funds from becoming caught up in the freeze, the PMA has refrained from effecting any U.S. dollar transactions, prolonging the period of uncertainty and aggravating the irreparable harm to the

[2] Two discrepancies exist in terms of BNY's response. On page 3 of the schedule attached to BNY's response, the second entry identifies the originating bank as "Ministry of Finance, Gaza, PMA 15775." Again on page 5, the last entry identifies the originating bank as "Ministry of Finance, Gaza, PMA 21120." These entries are either typographical errors or mistakes in BNY's record-keeping. As stated in the supplemental Declaration of George T. Abed, attached hereto as **Exhibit 8**, these accounts have nothing to do with the PMA. The entries above and below the entries in question identify the originating source as "Ministry of Finance, Gaza, PNA." The undersigned is currently investigating these discrepancies with BNY's New York counsel.

banking system in the Palestinian territories.

19 As a direct and proximate result of BNY's and Strachman's actions, PMA has and continues to suffer irreparable harm to its goodwill and reputation, as well as incurring substantial monetary damages.

**AS AND FOR A FIRST CAUSE OF ACTION**

**(Declaratory and Injunctive Relief)**

20. Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 19 as if more fully set forth herein.

21. The Notice of Injunction falsely reports to BNY that the PA and PLO assets are "titled" under PMA's name. Strachman, without any basis in law or fact, impermissibly extended the scope of the Injunction issued by this Court in the underlying action.

22. As a direct and proximate result of Defendant's actions and omissions, Plaintiff PMA has suffered and continues to suffer irreparable harm to its goodwill and reputation, as well as suffering substantial monetary damages.

23. Because, on information and belief, the Orders were secured and served without Rule 65(c) security, there is good reason to believe Plaintiff's injuries and damages are and will be irreparable.

WHEREFORE, Plaintiff Palestine Monetary Authority respectfully requests that the Court enter an order declaring the rights of the parties in this matter and to further declare that Strachman has improperly expanded the scope of the Injunction Order in this case without proper basis, and for such further relief as the Court deems just and proper.

**AS AND FOR A SECOND CAUSE OF ACTION**

24. Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 23 as if more fully set forth herein.

25. Strachman caused service of the Notice of Injunction on BNY.

26. PMA has a business relationship with PIB and all commercial banks in the Palestinian territories. These banks often conduct business in U.S. dollars. Generally, PMA regulates the banking system and helps maintain financial stability by providing liquidity to the banks. Specifically, PMA's role as manager of the funds in its custody, including clearing all transactions among banks generates income for PMA. While funds are frozen by BNY, PMA cannot fulfill its obligations to the banks it serves and is prevented from generating income. Moreover, PMA has been forced to pay interest to the banks it serves on the accumulating funds that have been frozen by BNY.

27. Strachman knew or should have known when he served the Notice of Injunction on BNY that PMA regulates all banks located in the Palestinian territories and acts as a clearing house, or intermediary for those banks whose inter-bank transactions in U.S. dollars are cleared through BNY.

28. The Notice of Injunction impermissibly extends the parameters of the Injunction issued by this Court in the underlying action.

29. By serving BNY the improper Notice of Injunction, Defendant either negligently or intentionally interfered with PMA's business relations with PIB and all other commercial banks located in the Palestinian territories. Defendant's issuance of the Notice of Injunction to BNY was dishonest, unfair and constituted an abuse of process.

30. As a direct and proximate result of Defendant's wrongful actions, PMA's relationship with commercial banks has been damaged and PMA has suffered and continues to suffer substantial monetary damages, as well as the loss of its goodwill and reputation.

WHEREFORE, Plaintiff Palestine Monetary Authority respectfully requests that the Court enter judgment in its favor and against Strachman in an amount to be proven at trial, but to include compensatory damages, punitive damages, prejudgment and post-judgment interest, and costs and expenses and for such further relief as the Court deems just and proper.

Dated: June 13, 2005

Respectfully submitted,

GIDLEY, SARLI & MARUSAK, LLP

Michael Sarli (by MP[illegible])

Michael G. Sarli, Esq. 2719
One Turks Head Place, Suite 900
Providence, Rhode Island 02903
Tel: (401) 274-6644
Fax: (401) 331-9304

Of Counsel:

Haig V. Kalbian, Esq.
Claire A. DeLelle, Esq.
KALBIAN HAGERTY L.L.P.
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
T: (202) 223-5600
F: (202) 223-6625