**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

--------------------------------------------------------------X

PALESTINE MONETARY AUTHORITY,

Plaintiff,

v.

DAVID STRACHMAN,
as Administrator of the
ESTATES OF YARON UNGAR
AND ERFAT UNGAR, *ET AL.*,

Defendants.

--------------------------------------------------------------X

CA 05 261

Civil Action No.: ______________

Judge: ______________________

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF**

PLAINTIFF Palestine Monetary Authority ("PMA" or "Plaintiff"), pursuant to Fed. R. Civ. P. 65, and the supporting Affidavit of George T. Abed and accompanying exhibits, respectfully submits this motion for a temporary restraining order and application for preliminary injunctive relief. In support of its Motion, Plaintiff respectfully refers the Court to the accompanying Memorandum of Law.

Dated: June 13, 2005

Respectfully submitted,

GIDLEY, SARLI & MARUSAK, LLP

Michael Sarli, by D-C8

Michael G. Sarli, Esq. 2719
One Turks Head Place, Suite 900
Providence, Rhode Island 02903
Tel: (401) 274-6644
Fax: (401) 331-9304

Of Counsel:

Haig V. Kalbian, Esq.
Claire A. DeLelle, Esq.
KALBIAN HAGERTY L.L.P.
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
T: (202) 223-5600
F: (202) 223-6625

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of June, 2005, I caused a true and complete copy of the foregoing Motion for Temporary Restraining Order and Application for Preliminary Injunctive Relief, accompanying Memorandum of Law, supporting Affidavit of George T. Abed and exhibits, Complaint and proposed order to be served

by overnight mail to :

Robert Tolchin, Esq.
JAROSLAWICZ & JAROS
150 William Street
New York, New York

and by hand-delivery to :

David Strachman, Esq.
MCINTYRE, TATE, LYNCH & HOLT
321 South Main Street,
Providence, RI 02903

Administrator for the Estates of
Yaron and Erfat Ungar and counsel for
Dvir Ungar, (Minor, By His Guardians And
Next Friend, Professor Meyer Ungar),
Judith Ungar, Rabbi Uri Dasberg and Judith Dasberg
(Individually and in Their Capacity as Legal
Guardians of Plaintiffs Dvir Ungar and Yishai Ungar),
Amichai Ungar, Dafna Ungar, and Michal Cohen.

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

------------------------------------------------------------X

PALESTINE MONETARY AUTHORITY,

Plaintiff,

v.

DAVID STRACHMAN,
as Administrator of the
ESTATES OF YARON UNGAR
AND ERFAT UNGAR, *ET AL.*,

Defendants.

------------------------------------------------------------X

CA 05 261

Civil Action No.: ______________

Judge: ______________________

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF**

PLAINTIFF Palestine Monetary Authority ("PMA" or "Plaintiff"), pursuant to Fed. R. Civ. P. 65, and the supporting Affidavit of George T. Abed and accompanying exhibits, respectfully submits this memorandum of law in support of its request for a temporary restraining order and application for preliminary injunctive relief and states as follows:

## INTRODUCTION

This Emergency Motion for a Temporary Restraining Order is warranted because non-party Bank of New York ("BNY") has improperly frozen approximately $30 million of PMA's funds without proper basis, severely disrupting the banking system in the Palestinian territories. BNY's actions were taken as a result of a "Notice of Injunction"—not sanctioned or approved by this Court—served on it by Defendants in this case. As a result of Defendants' actions, PMA is losing thousands of dollars on a daily basis, as well as the loss of its goodwill and reputation as the regulatory authority for all banks located in the Palestinian territories. PMA's raison d'etre is

to provide financial stability in the region and Defendants' unlawful action has threatened PMA's regulatory role and its ability to provide confidence in the banking system within the Palestinian territories. If immediate relief is not obtained, BNY's improper actions will cause a banking crisis in the territories and cause irreparable harm by impacting the ability of tens of thousands to conduct daily commerce.

## FACTUAL BACKGROUND

BNY's actions stem from its receipt of a restraining order and Injunction (the "Orders") issued by the United States District Court for the District of Rhode Island in the case styled, Estates of Yaron Ungar, et al. v. Palestinian Authority, et al., C.A. No. 00-105L (Honorable Ronald R. Lagueux) (the "Judgment Action"). A true and correct copy of the Orders is to the Complaint as **Exhibit 1**.

Upon information and belief, BNY's actions were largely related to BNY's receipt of a "Notice of Injunction" from Defendants' attorneys in the Judgment Action. A true and correct copy of the "Notice of Injunction" issued by David Strachman, Esq. and his law firm to BNY is attached to the Complaint as **Exhibit 2.**[1] As described below, the Notice of Injunction contains false statements regarding the PMA and impermissibly expands the scope of the Orders issued by Judge Lagueux in the Judgment Action.

The Judgment Action is based on allegations of acts of terrorism. The Orders issued in the that action arise from a judgment obtained by the plaintiffs against the Palestinian Authority ("PA"), the Palestinian Liberation Organization (PLO") and others. Significantly, nowhere in the Judgment Action is the PMA named as a defendant. Nor is the PMA named in the Judgment Action or as an entity holding or managing assets of any of the named entities or individuals.

[1] The "Notice of Injunction" dated May 29, 2005 will hereinafter be referred to as "Notice of Injunction."

Defendant David Strachman ("Strachman") is the Adminstrator of the Estates of Yaron Ungar and Erfat Ungar, two plaintiffs in the Judgment Action.[2] Strachman is also a partner in the law firm of McIntyre, Tate, Lynch & Holt (the "MTLH Firm"), located in Providence, Rhode Island.

Despite the fact that the PMA is not a defendant in the underlying action (or even mentioned in that action), on or about May 9, 2005, Strachman, as agent for Defendants, caused BNY to be served with the Notice of Injunction and a copy of the Injunction. Strachman's Notice (which was not endorsed by the Rhode Island Federal Court) stated that "assets of the PA and PLO **are** held and/or titled under the names...Palestine Monetary Authority...". (Emphasis supplied). See **Exhibit 2** to the Complaint. Upon information and belief, BNY froze all PMA-related transactions after receiving the Notice of Injunction falsely designating PMA as holding PLO and/or PA assets.

**PMA DISCOVERS THAT SUBSTANTIAL U.S. DOLLAR TRANSACTIONS HAVE BEEN FROZEN BY BNY**

On or about May 18, 2005, the PMA discovered that millions of dollars of transactions had been inexplicably frozen by the BNY. Abed Aff. at ¶ 10. Additionally, the PMA's ability to move its dollar holdings for interest bearing purposes has been blocked—seriously damaging the PMA's ability to manage the funds in its custody and to earn income therefrom. Id.

On May 19, 2005, PMA instructed its own bank, the PIB, to write to BNY urging that the Bank honor all outgoing and incoming payments and emphasizing that all frozen funds belong to private, licensed commercial banks in the Palestinian territories and not to the PMA. Abed Aff.

---

[2] Upon information and belief, Defendant the MTLH Firm is a six-attorney law firm based in Providence, Rhode Island. Upon further information and belief, Strachman is a partner in the MTLH Firm and as has acted agent for same. As such, he and the MTLH Firm represent the plaintiffs in the Rhode Island Action.

at ¶ 15. A true and correct copy of the letter from Mr. Usama Khader, General Manager of PIB to Mr. Ammar Khaleel, Middle East, Eastern Europe & Africa Division for the BNY, is attached to the Abed Aff. as **Exhibit E.**

Despite PIB's demands that the BNY unfreeze the transactions in question, the private fund transactions remain frozen. Abed Aff. at ¶ 16. PMA estimates that approximately $30 million in private fund transactions remain blocked today. Id. at ¶ 17. Also, since PMA discovered this situation and to protect its funds from further arbitrary action by the Defendants, the PMA has refrained from effecting any U.S. dollar transactions, prolonging the period of uncertainty and aggravating the irreparable harm to the banking system in the Palestinian territories. Id.

PMA immediately investigated the matter, contacting high ranking executives at the BNY. Id. at ¶ 11. BNY informed PMA that it had received a restraining order entered in the Judgment Action and, as a result, that BNY had taken measures to freeze PMA's transactions.

**THE PMA DOES NOT HOLD OR MANAGE FUNDS FOR THE BENEFIT OF THE PLO AND/OR PA OR FOR THE PLO AND/OR PA DIRECTLY**

The PMA is neither a defendant in the Judgment Action, nor does it hold or manage any assets of the PLO or PA or any assets of any other defendant named in the Action (nor does it have access to any of these funds). Abed Aff. at ¶ 12. It was not named in either of the Orders issued by the Court in the underlying action.

To evidence the PMA's autonomy and financial independence from the PA and PLO and to demonstrate that the blocking or freezing of PMA's transactions with BNY is without any legal or factual justification, PMA instructed its auditors to prepare a report detailing the source of the PMA's funds. A true and correct copy of the audit report by Saba & Co. (an international

auditing firm), dated May 25, 2005, is attached to the Abed Aff. as **Exhibit C.**[3] This Exhibit clearly demonstrates that all funds in PMA's possession, entirely and exclusively, consist of funds held on behalf of commercial banks, its own capital and reserves and employees' provident funds. Id.

In addition, a copy of an electronically generated call report (dated December 31, 2004)—showing the funds each commercial customer believes are held by the PMA (entitled "Required Reserves, Time and Current Cell Deposits with the PMA and differences between PMA Audit statement and the Banks Call Report")—is attached to the Abed Aff. as **Exhibit D.** This report can be reconciled with the auditor's report on the PMA's accounts (Exh. C) within approximately $3 million.[4] Again, this report is evidence that the PMA deals exclusively with privately owned commercial banks and has no financial relationship with the PA or PLO or any other defendant in the Judgment Action and that all funds deposited in the PMA are private funds. Abed Aff. at ¶ 14.

Further, BNY recently produced a schedule of all transactions authorized by PMA for the benefit of its customers. Complaint at ¶ 15. All of the funds beneficiaries are commercial banks and not the PA or PLO. A true and correct copy of Bank of New York's Responses to Plaintiff's Questions in Connection with Information Subpoena, dated June 10, 2005 is attached to the Complaint as **Exhibit 6.**[5]

---

[3] The report was prepared in accordance with internationally accepted auditing principles and standards.

[4] Discrepancies can be explained due to differences in booking dates and value dates of different entries.

[5] Two discrepancies exist in terms of BNY's response. On page 3 of the schedule attached to BNY's response, the second entry identifies the originating bank as "Ministry of Finance, Gaza, PMA 15775." Again on page 5, the last entry identifies the originating bank as "Ministry of Finance, Gaza, PMA 21120." These entries are either typographical errors or mistakes in BNY's record-keeping. As stated in the supplemental Declaration of George T. Abed, attached as **Exhibit 8** to Complaint, these accounts have nothing to do with the PMA. The entries above and below the entries in question identify the originating source as "Ministry of Finance, Gaza, PNA." The undersigned is currently investigating these discrepancies with BNY's New York counsel.

In spite of the foregoing evidence that PMA holds only funds of private commercial banks and no government funds, Defendants' New York counsel argued, during a June 6, 2005 hearing in the Supreme Court of New York (detailed below), that the PMA's own establishing law states that the PMA receives funding from the PA. However, this is not true. As set forth in Mr. Abed's sworn affidavit, notwithstanding the provisions of Article 8 of the Monetary Authority Law (attached as Exhibit A to the Abed Aff.), the PMA did not receive any subscription capital from the PA or PLO upon its establishment or at any other time since. See Abed Aff. at ¶ 7. Similarly and also notwithstanding the provisions of the Monetary Authority Law (quoted at length by Defendants' New York counsel during the June 6, 2005 New York hearing), the PMA does not hold any gold reserves and it does not act as the fiscal agent for the PA. Abed Aff. at ¶ 6. The highest source of authority for the activities of the PMA is its own board of directors, chaired by the Governor. Id.

**THE NEW YORK STATE ACTION**

From May 18, 2005 through May 25, 2005, the PMA endeavored to obtain an explanation and accounting from BNY, as well as attempt to resolve the situation. Complaint at ¶ 10. BNY informed PMA that it had received a restraining order entered in this action and, as a result, that BNY had taken measures to freeze PMA's transactions. On or about May 28, 2005, Mr. George Abed, Governor of the PMA, flew from Ramallah to the United States to seek legal counsel. Id. He was able to retain counsel on May 30, 2005 after having some difficulty locating counsel over the long holiday weekend. Id.

Washington, DC counsel then retained local counsel in New York and attempted to file papers in the Supreme Court of New York—the most accessible jurisdiction for emergency relief, which was also where Strachman has domesticated the judgment and where the PMA's

property was frozen—on May 31, 2005.[6] Id. at ¶ 11. A hearing took place on the PMA's application for emergency relief on June 6, 2005. Id. A true and correct copy of the transcript from that proceeding is attached to the Complaint as **Exhibit 3**. The Honorable Bernard Fried denied the application for temporary restraining order and set a briefing schedule on the injunction application. Although Judge Fried exercised his discretion and retained jurisdiction over the case, he expressed the opinion that the matter would be best heard before this Court.

In view of the foregoing, a temporary restraining order is necessary to avoid a major banking crisis in the Palestinian territories which could escalate into a financial crisis in the region and to otherwise prevent PMA from suffering further injury to its goodwill and reputation.

## ARGUMENT

The First Circuit has held that the purpose of a TRO is to prevent a threatened wrong or injury until merits of the complaint can be addressed. Planned Parenthood League of Massachusetts v. Belotti, 641 F.2d 1006, 1009 (1st Cir. 1981) quoting, Women's Community Health Ctr., Inc. v. Cohen, 477 F. Supp. 542, 544 (D. Me. 1979). A plaintiff must satisfy four criteria in order to be entitled to injunctive relief. The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. Id. Though all elements are vital, "the prime requisite for injunctive relief is the threat of irreparable future harm." National Truck Carriers v. Burke, 608 F.2d 819 (1st Cir. 1979).

[6] Counsel was turned away (in error) by the clerk of the court until they were able to file papers on June 3, 2005.

**I. The PMA Will Suffer Irreparable Injury To Its Goodwill And Reputation Among Commerical Banks Located In The Palestinian Territories In The Absence Of Emergency Relief.**

As stated above, the PMA is the regulatory authority for commercial banks and related deposit taking institutions in the Palestinian territories. Also, PMA essentially acts as a clearing house, or intermediary, for all commercial banks in the Palestinian territories, such as the Arab Bank, PLC, Cairo Amman Bank and the Palestine Bank, Ltd. It transacts in Israeli shekels, euros, Jordanian dinars and importantly for the purposes of the requested emergency relief—in U.S. dollars.

The PMA, through its own bank—the Palestine International Bank ("PIB")—clears all U.S. dollar transactions with the PIB's correspondent, BNY. These transactions arise from daily check clearances, inter-bank transfers and other transfers between private parties and mediated by the PMA. Through this activity, the PMA provides needed liquidity and facilitates transfers among private banks and individuals.

Because the PMA has been forced to suspend its U.S. dollar transactions—to safeguard against future transactions becoming caught up in the BNY freeze—it is unable to carry out its functions as a clearing house and regulatory body. Its inability to fully perform these roles will cause instability in the banking system in the territories if this situation is permitted to continue without redress. Pending a preliminary injunction hearing regarding the freeze action affecting some $30 million in funds, at a minimum, the PMA requests that the Court enter an order permitting the PMA to process future U.S. dollar transactions through BNY. This interim remedy will help safeguard against aggravating an already serious situation that will shake commercial banks' confidence in the PMA. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 13-14 (1st Cir. 2000) (affirming grant of injunctive relief where damage to good will

and reputation is often unquantifiable and satisfies the irreparable harm standard). The New York Supreme Court's reluctance to act in this situation has already exacerbated the situation.

## II. The Injury To The PMA And The Banking System As A Whole Within The Palestinian Territories Outweighs Any Harm That Granting Injunctive Relief Would Inflict On Defendants.

The harm to PMA's goodwill and reputation in the banking industry in the Palestinian territories and its ability to provide stability and liquidity to the banking system far outweighs any harm that could inure to Defendants should the Court grant the relief requested herein. The PMA has demonstrated through the Affidavit of George Abed, Governor of the PMA and through its auditors' report and BNY's Response to Plaintiff's Questions in Connection with Information Subpoena (Exh. 6 to the Complaint) that it does not hold any funds belonging to or for the benefit of the PLO or PA. Accordingly, no injury will inure to Defendants because they have attacked funds that cannot properly or legally be attached to satisfy the judgment entered in the underlying action.

Moreover, a cursory side-by-side review of the Notice of Injunction and the Orders in the Judgment Action reveals that the contents of the Notice of Injunction regarding the PMA are not legitimately derived from the language of the Orders. As such, Defendants improperly caused BNY to freeze PMA's funds in the first instance. Because Defendants procured the BNY freeze through illegitimate means, the harm caused to Defendants by granting injunctive relief is far outweighed by the injury currently inuring to Plaintiff—which will only increase should the Court reject Plaintiff's application for immediate relief.

## III. Plaintiff Has Demonstrated That It Will Likely Succeed On The Merits Of Its Claims.

As stated above, a cursory review of the Notice of Injunction shows that its contents (stating that assets of the PLO and PA are held by the PMA) are not legitimately derived from

the language of the Orders entered by Judge Lagueux. Additionally, the PMA has demonstrated that it does not hold any of the PLO's or the PA's funds. As such, PMA will succeed in its request for declaratory relief and an order from this Court finding that Defendants' actions constituted overreaching.

**IV. The Public Interest Factor Militates In Favor Of Injunctive Relief.**

The public interest demands that attorneys act fairly and honestly when carrying out their professional activities. As described above, the contents of the Notice of Injunction—regarding the PMA and its alleged association with PLO and/or PA assets—run contrary to the public interest in professional honesty and fairness. Injunctive relief in this case will advance the public interest by demonstrating to judgment creditors that they cannot use unfair means to obtain satisfaction of monies owed to them. By circulating their own Notice of Injunction to third-parties, Defendants have circumvented the requirements of the Federal Rules of Civil Procedure, namely Fed. R. Civ. P. 65 and notably have avoided any bond requirements.

More importantly, injunctive relief will further serve the public interest in the Palestinian territories by ensuring that public confidence is protected in the PMA's ability to provide stability and liquidity to the banking system.

## CONCLUSION

For all of the above reasons, Plaintiff Palestine Monetary Authority respectfully requests that the Court grant its Motion for Temporary Restraining Order and declare the Notice of Injunction invalid and that the Bank of New York's actions are without legal support. Plaintiff further requests that the Court establish a briefing schedule for its application for preliminary injunction and set the matter for hearing and for such further relief as the Court deems just and proper.

Dated: June 14, 2005

Respectfully submitted,

GIDLEY, SARLI & MARUSAK, LLP

Michael Sarli /by DRP

Michael G. Sarli, Esq. (#2719)
One Turks Head Place, Suite 900
Providence, Rhode Island 02903
Tel: (401) 274-6644
Fax: (401) 331-9304

Of Counsel:

Haig V. Kalbian, Esq.
Claire A. DeLelle, Esq.
KALBIAN HAGERTY L.L.P.
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
T: (202) 223-5600
F: (202) 223-6625

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of June, 2005, I caused a true and complete copy of the foregoing Motion for Temporary Restraining Order and Application for Preliminary Injunctive Relief, accompanying Memorandum of Law, supporting Affidavit of George T. Abed and exhibits, Complaint and proposed order to be served

by overnight mail to :

Robert Tolchin, Esq.
JAROSLAWICZ & JAROS
150 William Street
New York, New York

and by hand-delivery to :

David Strachman, Esq.
MCINTYRE, TATE, LYNCH & HOLT
321 South Main Street,
Providence, RI 02903

Administrator for the Estates of
Yaron and Erfat Ungar and counsel for
Dvir Ungar, (Minor, By His Guardians And
Next Friend, Professor Meyer Ungar),
Judith Ungar, Rabbi Uri Dasberg and Judith Dasberg
(Individually and in Their Capacity as Legal
Guardians of Plaintiffs Dvir Ungar and Yishai Ungar),
Amichai Ungar, Dafna Ungar, and Michal Cohen.

[signature]